UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF OHIO

In re UNITED STATES OF AMERICA
ex rel CURTIS VAN STUYVESANT,

Petitioner.

vs

Docket No.
Affirmation In Support Of A
Petition For An Extraordinary
All Writ Act of Mandamus And
Prohibition
Pursuant to 28 U.S.C 1651 [a]

Eric Holder, United States Attorney General, John Ashcroft, Alberto Gonzales, and
Michael B Mukasey, Former United States Attorney General, Janet Napolitano, Secretary
United States Dept. of Home Land Security, Michael Chertoft, Former Sec United States
Department of Home Land Security, Robert Muller, III Director Federal Bureau of
Investigation ,Valerie Caproni, General Counsel Federal Bureau of Investigation ,
James Duff Director, and William Burchill, Assistant Director/ Counsel, Administrative,
Office of The United States Court,  Mary Jo White, and Michael Garcia Former United
States Attorney SDNY, Terrence Flynn, Former United States Attorney WDNY,
John Doe, Assistant Director of FBI New York City Field Offices,John Doe, District ICE
New York City District Office, District Counsel ICE New York City District Office,
Dennise Jacobs, Judge, Robert Katzman, Judge, Robert Sack, Judge, Barrington Parker
Jr., Judge, Rosemary Pooler, Judge, John Walker, Judge, Reena Raggi, Judge.
Richard Wesley, Judge, Catherine O'Hagan Wolf, Clerk, Roseann Mackechnie, Former
clerk, United States Court of Appeals for The Second Circuit, Lewis Kaplan, USDJ
SDNY, Debra Freeman, USMJ SDNY, David Larimer, USDJ WDNY, Natlie Sobchack,
SDNY Pro-se Clerk, Charles Carra, Pro-se Clerk WDNY. Lauri Carra, Lori Reid, Rayne
Benz, David P. Chapus, Law Clerks, WDNY

Respondents,

State of New York    )
County of Wyoming ) ss
Township of Attica   ) ss

Petitioner CURTIS VAN STUYVESANT, being duly sworn deposes and says

under the penalty of perjury. I affirmed the following that:

1. I am the realtor in the above caption matter.

1

2. Realtor is fully familiar with the question of fact and the questions of law involved in the petition, for an all Writ Act to of Mandamus and prohibition.

## PRELIMINARY STATEMENT

3. This is an application for An Extraordinary Writ authorized by the All Writ Act, 28 U.S.C 1651 (a) for Mandamus to compel a Federal Untied States District Court or a United States Court of Appeals to respect petitioners right under the United States Constitution, First Amendment petition clause to petition the government for redress of injury caused by private and public transnational, multinational and national pharmaceuticals, public and private Health care providers, Health Management Care Organization; State of New York Department of correctional Services, and Municipalities, including private and prison doctors. Petitioner is also under the Fourteenth Amendment due process and equal protection clauses seeking to gain access to the Court and a jury trial under the Seventh Amendment, and a prohibition against court clerks, Law Clerks, District and Circuit Judges from violating Federal rule of civil procedures rule 9(b), 12(e) and 52(a) or refusal to adjudicate petitioners annexed civil complaint on the merit and allowing discovery.

A petition For An All Writ Act is not a matter of right but, a discretion sparingly exercised. To Justify the granting of any such writ petitioner will show that exceptional circumstances warrant the exercise of the Courts discretionary powers and that adequate relief cannot be obtain in any other form or from any other Court.

2

I

## FIRST AMENDMENT PETITION CLAUSE, FIFTH AMENDMENT AND FOURTEENTH AMENDMENTS DUE PROCESS CLAUSE AND THE EQUAL PROTECTION CLAUSE

1.This application is related to the Jonah Cancer And Blood Treatment Pavilion et al civil action and 28 USC 2241 Real 1D Act, and 28 USC 2254 Petition For a Writ of Habeas Corpus. Diversity of Citizenship is complete for the Constitution Tort, Toxic Tort, Alien Claim Tort Act, and Torture Victim Protection Act, Claims. Any reference to 28 USC 2254 and 28 USC 2241 Real 1D Act is probative because it goes to the open ended fraud and para judges private judging of Sobochack, O'Hagan Wolf, Mackechnie, Carra, Reid and Carra et al. Ohio defendants are named in the annexed Civil Complaint. See Appendix A, Jonah Cancer And Blood Treatment Pavilion et al Complaint.

2.The First Amendment guarantee the right to petition the government for redress of grievance. Thus this right has been one of the most precious of all liberties safeguarded by the Bill Of Rights. See Turner v. Safley, 482 US 78, 84, 107 S.ct 2254, 96 Led 2d 64 (1987). " Prisoners retain the Constitutional right to petition the government for redress of grievances. See Chambers v Ohio RR 207 US 148 (1970), Bieregy v Reno 59 F3d 1445 1453 (CA3 1995).

3. I have been denied this right by both the federal and State Court Judges in the state of New York due to inculpatory uncontroverted evidence and incontrovertible proof proving the culpability of local and state Judges, prosecutors and prison officials and Federal Court Clerks in an open ended scheme to murder, deport, and deprivation of life, liberty, property and the pursuit of happiness.

3

4. The right of access to the Court is an aspect of the right of the petition clause. See e.g. Bill Johnson Restaurants Inc. v. NLRB, 461 U.S. 731, 741, 103 S.ct 2461, 76 Led 2d 277 (1983). This right to petition applies with equal force to a persons right to seek redress against the State of New York under the Fourteenth Amendment as well as persons right to seek redress from all branches of government See Cal Motor Transport Co. v. Trucking Unlimited, 464 U.S. 508, 510, 92 S.ct 609, 30 Led 2d 642 (1972).

5. The Court in Bound v. Smith 430 U.S. 817, 97 S.ct 1491, 52 Led 2d 72 (1997) defined the right of access, See e.g. Lewis v. Casey, 518 U.S. 343, 116 S.ct 2174, 135 Led 2d 606 (1996). When an inmate challenges his conviction, sentence or condition of confinement which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented by Federal Law Clerks and Judges in retaliation against petitioners private Attorney General activities that forced Micheal B Mukasey. Former CJ, United States District Court SDNY. From taking Senior Status and Roseann MacKechnie from her position as Chief Clerk U.S. Court of Appeals for the Second Circuit; who since 2000 in conjunction with Natalie Sobochack SDNY Senior pro-se Clerk own Rule 52 (a) FRCP violation was responsible for the refusals of the Courts to adjudicate petitioners meritorious claims on the merit due to 18 USC 1961, 1962, 241, and 242 implicating their friends and political allies in the New York State and New York Attorney Generals office and New York County District Attorney's office. See Appendix B. Federal Administration Complaint. Appendix C. Supreme Court State of New York Appellate Division First Judicial Department Disciplinary Committee complaint. See May v Sheahan 226 F3d 876 883 (CA7 2000).

4

6. Twenty point five million dollars (circa 1954 Face value), worth of negotiable financial instrument, i.e. Bearer Bonds, Bullion certificates of deposit, Investment grade diamonds, in addition to one million dollars in cash was removed by New York County prosecutors from the Dime Savings Bank of New York FSB, sub nom, Washington Mutual FSB, sub nom, J.P. Morgan Chase Bank N.A. in 1998 without a forfeiture proceedings or order. Furthermore, cash bail exonerated in 1999 which could have been used to pay court filing fees was never released to prevent this sort of legal action in Federal Courts. Petitioner is entitled to Equitable Estoppel, Doctrine relief. See Heckler v. Community Health Services 467 U.S. Sa (1984), Corniel- Rodrigues v I.N.S  S32 F2d 301 (CA7 1976), Barret v United States, 798 F2d 565 (CA2 1986).

## II
## WILD FANTASTICAL, DELUSIONAL, OR INCREDIBLE ALLEGATION

7. It does strain incredulity to a breaking point if one will accept the fact that experienced United States District Judges who were former AUSA and graduates of top law schools are not aware of the fact that voluntary consent of a human subject is absolutely essential. Petitioners complaint focus on the asserted substantive due process claim under section 1983, in addition to section 1985, Torture Victim Protection Act, Alien Tort Claim Act, Constitutional Tort Due Process Clause right to bodily integrity .

8. The defendant's State of New York prison officials, private doctors, university of Buffalo medical school, Erie County Medical Center, Jonah Cancer and Blood Treatment Pavilion, Prisoners Health Services Inc, Kalida Health Inc violated petitioner's right to bodily integrity by subjecting him to a palliative medicine metastatic Cancer

5

Phase I clinical trials for terminally ill patients, with less than 180 days to live experiment without obtaining his informed consent from 2003 to 2007.

9. Petitioner was lied to by Zale Bernstein MD. Jonah Cancer and Blood Treatment Pavilion, Erie County Medical Center, Buffalo University Medical School Residents and prison doctors that he has a stage IV metastical prostate, soft tissue and bone cancer in December of 2003 and he was given 180 days to live. But, the defendants knew that petitioner is Cancer free and that his early stage 1 prostate cancer was in full and is still today in complete remission after successful treatment with Brachy Therapy by The State of New York University, (S.U.N.N.Y) Regional Oncology Center, University Medical Hospital Syracuse, New York, Clinical Oncologists and Radiation Urologist in 2001.

10. The right to bodily integrity, far from being a novel constitutional claim, forms a central component of our substantive due process jurisprudence and that the defendant's exposed petitioner to radiation, androgen deprivation, toxic zelondionic acid, bisphiosphonates anti-hormones, Chemotherapy and other agents without his consent or knowledge clearly violated this right.

11. Referring to the principles of liberty and autonomy implicit in the Constitution, the judicial development of substantive due process and the Common Law informed consent doctrine, the Court in re Cincinnati Radiation Litigation 874 F. Supp 796, (SD Ohio 1995), Case No. C-1-94-126 held that this right was clearly established at the time of the radiation experiments. Importantly the Supreme Court in Washington v. Harper, 494 U.S. 210, (1990), explicitly recognized that the prisoners possessed a

6

significant liberty interest in avoiding the unwanted administration of drugs under the due process clause of the Fourteenth Amendment.

12. Since the New York State government, Erie County and New York City employees cannot invoke qualify immunity and the Eleventh Amendment does not bar Alien Tort Act Claim and Torture Victim Protection Act against the State, but their friends in the Federal Court have decided to violate Rule 52 (a,) in a very ingenious way: See United States District Court WDNY orders. Appendix D, E, F, G.

13. In rejecting the second prong of In re Cincinnati radiation litigating defendants qualified Immunity defense, this court demonstrated that the right to bodily integrity was clearly established at the time of the radiation experiments.

14. The voluntary consent of the human subject is absolutely essential.

This means that the person involved should have sufficient knowledge and comprehension of the elements of the subject matter involved as to enable him to make an understanding and enlighten decision. It should be made known to him the nature, duration and purpose of the experiments, the methods and means by which it is to be conducted; all inconveniences and hazards reasonably to be expected and the effects upon his health and person which may possibly come from his participation in the experiments. See United States v. Brandt. (The medical case). 2 Trials of war criminal before the Nuremberg military Tribunal under Control Law No.10, 181 (1949).

15. On May 24, 1960, researchers at the Cincinnati General Hospital Subjected J.W, an African American man with Cancer of the left tonsil to dose of whole body radiation. So, began a series of human radiation experiments at the hospital stretching

almost eleven years until May 19 1971. Funded by the DOD, the experiments were undertaken to determine the effects of radiation on the combat readiness of soldiers.

16. Specifically, the researchers sought a "reliable easy test for radiation damage" which would aid the military in determining what amount of radiation exposure would reduce a soldiers "cognitive" and other central nervous system functions below a minimum level of effectiveness. See In re Cincinnati Radiation Litigation. 874 F. Supp 796 (S.D. Ohio 1995).

17. The research team subjected 88 patients to the experiments. Most important the patients were neither informed of the risk of death from radiation experiments nor the likely side effects resulting from exposure.

18. The Department of Energy (DOE) and it's fore runner the Atomic Energy Commission alone conducted 154 Cold War radiation experiments on 9000 persons. Gary Lee, United States Energy Agency, Radiation involved 9000 studies, says Washington Post, February 10, 1995.

19. Those included mental patients in San Francisco who were given dose of iodine 131 to determine it's effects on their thyroid glands. Infants with respiratory problems who were given blood mixed with Choromium 50 at Vunderblitt University and 18 people aged 6 to 50, some completely healthy who were given milk laced with radioactive iodine at University of Rochester in 1963. One of the children in this study develop thyroid Cancer.

20. In 1970 prisoners in Oregon State prison had their testicles irradiated to determine the effects of the radiation on United States astronauts; Gary Lee. prisoners irradiation probed tests were among riskiest of Cold War Era. Washington Post

November 20, 1994 at A.1. Radiation experiments similar to those performed at Cincinnati General Hospital occurred at 38 Penal institution Nationwide. Paul Barton, Deadly Exposure: General Hospital Atomic secrets Cincinnati Enquirer July 29, 19994 B1 and B2.

21. In a particularly egregious experiment the subject of Craft v. Vanderbilt University No. 3: 94 0090 ( MD Tenn December 22 1994.) Plaintiff alleged that research doctors at Vanderbilt University Hospital fed 829 pregnant women a tracer dose of radioactive Iron and then followed up to determine the Morbidity and mortality experience of the mothers and their children. Craft v. Vanderbilt University No. 3: 94 0090 ( MD Tenn December 22 1994.). The Department of Defense which funded the Cincinnati experiments has yet to declassify all of it's files regarding radiation experiments. Lee Supra at 13.

22. The examples of horrific human experiments given above that was conducted in the interests of national security by reputable and renown Medical researchers in comparison to Jonah Cancer and Blood treatment Pavillion and Zale Bernstein a disreputable oncologist forced out of Roswell Park Cancer Research Center and conducted in a decaying urban blight municipal hospital where non of the defendants or the Federal Judges or Clerks would send themselves their immediate family or barnyard animals for treatment. should not be considered irrational or wholly incredible more so in the face of second, third, fourth and fifth medical opinions. published scientific and medical evidence from international and national respected Oncologists, Urologists and surgeons which are uncontroverted evidence and incontrovertible proof.

9

23. The Court is Neitzke v Williams 490 U.S. 319 325 (1989) define a frivolous complaint as one that lacks an arguable basis in Law or in fact. In this sense, Courts possess the authority to dismiss a complaint based only on a theory, but courts may also "Pierce the Vail of the complaint's factual allegations" to dismiss claims that are factual baseless. Id at 327.

24. This analysis however is not meant to be a fact finding process where factual disputes are resolved. Denton v. Hernandez 504 U.S. 25, 32 (1992). Here, none of the factual disputes have been resolved and the main actors Josephe Tan Tan and Dr. Zale Bernstein admitted on 12-26-2008 and Eileen Deniesio New York State Department of correctional Services Regional Health Services Administrator, On 7-29-09. See Appendixes H, and I that Petitioner did not have a reoccurrence of Cancer without which a metastastic stage IV or even Cancer will be impossible.

25. In light of the Cincinnati radiation litigation the proper question is whether the factual allegation are irrational or wholly incredible. Id at 33. The United States District Courts WDNY and SDNY and the Second Circuit Federal Courts in New York State, unarticulated, illogical, unintelligible, incoherent, unpublished, para Judges private judging opinions have not set a definition for what constitutes a malicious filing under the statutes when dismissing Petitioners claims against "their friends".

26. The Torture Victims Protection Act and the Alien Tort Claim Acts are two Federal Statutes with Universal Jurisdiction regardless of extraterritorial component. See Zubeda v. Ashcroft 333 F3d 463 (CA,3, 2003).

27. The term " Jus Cogens norm" is defined as a norm accepted by the International community of States as a whole as a norm of general International Law

having the same character. See Vienna Convention On The Law Of Treaties May 23 1969 and 53 1155 U.N.T.S 332 334. Jus Congens norms enjoys the highest status with in International law.

28. Petitioner is a stateless citizen and a National of the United States granted refugee status and political asylum and Permanent Resident Status. Even though he has resided in the United States for 30 years the Bill of Rights and the constitution does not provide him with any protection. Federal Judges and Law Clerks who have experience in Admiralty Law are cognizant of the International and United States response to prosecuting Federal suits involving stateless vessels or Pirates.

29. Universal jurisdiction applies and no nexus with the prosecuting state is required. Petitioner status resemble in some compelling ways the problems of stateless vessels even though the legal issues are less complex, reference to these principles can provides assistance, and perhaps more importantly confidence that legal precedent in other areas of International Law supports the justifiability of ATCA and TVPA.

30. Where the stateless vessel is concerned territorial sovereignty issue never arise because the vessel belongs to no nation and the harm has not been committed within the boundaries of any given territory. See Iqbal v. Hasty 490 F3d 143 157- 158 ( CA2 2007) cert granted sub nom. Ashcroft v. Iqbal. 128 S.ct 2931 (2008). C.F. Abdullah v. PFizer 05-4863 cv CA2 ( Jan, 30, 2009) See. Kadic v. Kradic 70 F3d 232 243 (CA2 1995) and Filartiga v. Pena- Arala 630 F2d 876 (CA2 1980).

31. Three questions are implicated here:

(a) Does a stateless citizen claim that arise from the tortuous act of United States Citizens, Government officials, local and state government officials, or Domestic and

11

Foreign corporations committed inside the United States is a subject matter under Articles iii, and does a Federal Court has personal jurisdiction? (b) in What sort of claim if any, does a stateless citizen who has suffered intentional law tortuous conduct have a right of a claim in a United States Federal Court ?,(c) assuming subject matter jurisdiction and a right of action initially has been established does the general immunity provided by sovereignty Eleventh Amendment and Foreign Sovereign Immunity Act bar the Federal and District Courts from exercising jurisdiction over the case.

32. Federal Courts generally do have subject matter jurisdiction over extraterritorial alien tort suits, and internal alien 42 USC 1983 Constitutional tort and aliens plaintiff's have a right of action for tort claims of fundamental norms of International and domestic Constitutional Law and that the F.S.I.A Act of 1976. the T.V.P.A. act of 1991 and the A.T.C.A Act of (1789). The Act Of State Doctrine of Universal Jurisdiction does not require the dismissals of such claims brought against individual defendants who committed such violations whether or not those defendants are foreign or United States officials.

33. Each is presented as one part of an integrated body of law intended to fulfill the sovereign obligation of the United States to provide foreign citizens with an opportunity to litigate tort claims. An investigation of the underpinnings of this body of law will demonstrate that this obligation rests on the conviction that the international promotion of civil Justices buttress the stability of the World community. Ironically, from August 27 1998 to January 27 2009 petitioners factual allegations against Natalie Sobochack United States District Court SDNY senior pro-se clerk and a Cabal of Law clerks, charging fraudulent concealment, obstruction of justices, refusals to subjected

pleadings for review, destruction of physical evidence. usurpation of judicial authority and usage of district judges signature rubber stamps pads to forge bogus Court orders denying relief and violations of FRCP rule 52 (a) was considered a wild, fantastical and delusional allegation.

34. Litigation of a Federal Rule of Civil Procedure Rule 60 (b) (3) (4) (6) motion in a 28 USC 2254 proceedings section 2254, Rule 6, FRCP Rules 11, and 59 (e), Federal Rule of Appellate Procedure Rule 4 (a) and 1200 pages of evidence which included memoranda's from the U.S. Attorney Office SDNY, FBI New York City Field office E.O.I.R and B.I.A certificates of representation and I.C.E certified immigration files for the victimless purported victims, proving petitioner's actual innocence and the fabrication of a non existing crime from a whole cloth and the reason why a selective vindictive malicious pretextual prosecution was initiated has since been proven with incontrovertible proof. See Appendix J

35. Annexed herein are petitioners 28 USC 2254 Rule 60 (b) (1) (2) (3) (4) (5) (6) motion, Appendix K. letter to Mr. Trevor Morrison Appendix L. Letter to Ms. Dawn Johnson Chief Office of Legal Counsel DOJ. Appendix M Letter to Justice Luis Gonzales presiding Justice Supreme Court State of New York Appellate Division First Department Appendix N., Letter to Chief Justice Jonathan Lappman, Chief Judge State of New York Court of Appeal Appendix O, Letter to Micheal Jordan Counsel to Dennise Jacobs, United States Court of Appeals For the Second Circuit Chief Judge Appendix P, Second Circuit Judicial Council Complaint, Appendices Q and R, 28 USC 2254 public docket SDNY Appendix S, Letter from Mr. Allan Friedberg Chief Counsel Department Disciplinary Committee, Supreme Court State of New York Appellate Division First

Department Appendix T., Letter to USDJ Lewis Kaplan dated 11/18/08 re section 2254 Rule 6. Appendix U, proof of Service Section 2254 Rule 6 Appendix V.

36. Petitioners reargument Rule 59 (e) motion was filed on 12-20-08. See Appendix W. A timely Notice of Appeal filed on 1-19-09 was once again fraudulently concealed. See Appendix X. On 2/24/09 Judge Kaplan signature was forged on an order barring the timely Notice of Appeal. See Appendix Y, Judge Kaplan alleged  12-16-08 order denying Rule 60 (b), (3), (4) and (6) without prejudice and ordering him to file a section 2244 successive petition in the Second Circuit.

37. Even after the intervention of Hon Jon Neuman, senior United States Court of Appeals for The Second Circuit Judge and one of the most ethical and respected Jurist in the nation, Sobochack et al attempted to procedurally barred petitioner because they wrongly assumed that he could not provide proof that in response to the court 12-16-08 order, however a timely a timely 12-20-08 re-argument motion was filed but the State Attorney General Office and the New York County District Attorney office Ordered State Prison Officials to use a pretextual disciplinary action as probable cause on 12-28-08 to confiscate petitioners section 2254 work product and exculpating evidence, confined him in solitary confinement and punitively transfer him from a medium level to medium facility to a maximum A security prison. If petitioner did not smuggled a copy of his pleadings out of prison and if ethical deputy clerks did not provide his family with copies of the U.S. District Court SDNYtime line and date lined certified stamped copies of his motions, pleadings and Notices, the Second Circuit would not have accepted petitioner's claim or Calendar his Notice Of Appeal.

**III**

14

### PLAUSEABILITY, NOTICE,
### AND HEIGHTENED PLEADINGS

38. The United States Supreme Court Changed the Landscape for motion to dismiss when it decided Bell Atlantic Corp v. Twombly 127 Sct. 1955 (2007). In Twombly, the Court declared that the often quoted passage regarding the Federal Rules Of Civil Procedure 8 pleading standard, Set Forth in Conley v. Gibson 355 US 41 (1957) has earned it's retirement and set forth an apparent new standard for review. The Court declared that to survive a motion to dismiss a complaint must raise a right to relief above the "speculative level" and "state a claim to relief that is plausible on its face". The Supreme Court labeled the new standard the "plausibility standard" See Twombly, 127 S.ct at 1968.

39. A review of petitioners complaint will show that he pleaded more than labels and conclusions or a formulaic recitation of the elements of a cause of action. The court in Twombly stated to survive a motion to dismiss, therefore a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face". id at 1965, 1974.

40. The sixth Circuit discussed the Twombly decision in Bassert v. National Collegiate Athletic Association 526 F3d 426 430 (CA6 2008). The court confirmed that Twombly does not require a heightened fact pleadings of specifics but only enough facts to state a claim to relief that is plausible on its face". 538 F3d at 440 citing Twombly See also Zaluski v. United AM. Health Care Corp 527 F3d 564 570 (CA6 2008). "Recognizing that factual allegations must raise a right to relief above the speculative level in securities fraud cases." Sensations Inc v. City of Grand Rapids 526 F3d 291, 295,

15

296 (CA6 2008). "Noting uncertainty concerning scope of Twombly in first Amendment right case.

41. The Second Circuit in acknowledging Twombly while addressing a claim arising out of property disputes and has explained that Twombly requires a plaintiff's to provide the grounds upon which his claim rest through factual, allegations sufficient to raise a right to relief above the speculative level. Goldstein v Pataki 576 F3d 50, 56 (CA2) Cert denied 128 Sct 2964 (2008).

42. Moreover, Twombly requires the pleader to amplify a claim with some factual allegations in those context in which such amplifications is needed to render the claim plausible. Iqbal v. Hasty 490 F3d 143, 157-158 (CA2 2007) Cert granted Sub nom Ashcroft v. Iqbal 128 Sct 2931 (2008). The Third Circuit has explicitly affirmed that Twombly plausibility standard is applicable to all cases. Wilkerson v. New Media Tech Charter School Inc 522 F3d 315 (CA3, 2008).

43. There is one group of cases where sufficient factual details may help the court to resolve a case at the pleading stage cases that raises the issue of state actions. The classical prison complaint of inadequate medical attention is a prime example. Unless there is deliberate indifference to serious medical needs, Estelle v. Gamble 429 U.S. 97, 104 (1976). There is no Constitutional violation with the exception of where the omitted fact will show that the petitioner's lacks a Federal claim, it is hard to See how requiring greater specifically will rout out frivolous claims.

44. Petitioner's complaint against more than four dozen defendants where fraud, conspiracy and aiding and abetting was alleged is neither argumentative, prolix and verbose see Newman v. Massachusetts 115 FRD 544 343 (D Mass 1987). It is neither a

garbage-can compliant with appended scrap of newspapers clippings, magazine articles, correspondence and an unbelievable variety of other unnecessary and irrelevant matters. They are medical records released by public service concerned prison medical officials who were not authorized to do so and private and public hospitals doctors.

45. It will be insufficient to plead merely that the defendants "deprived petitioner of a legally protected right" So, also it is insufficient to alleged merely that a defendant "deprived petitioner of a Constitutional protected right.

46. Federal Rule 8, which is entitled General Rules of pleading provides, in pertinent part that a party must plead a short and plain statement of the claim showing that the pleader is entitled to relief … That is, a plaintiff must demonstrates, on the face of the pleading, that a claim for relief is set forth in its collective allegations.

47.The Federal Rules general pleading invocation is to permit the plaintiff, in most cases, to set forth allegations without requiring that every element of his claim be articulated or pleaded with specificity, 5 Charles A. Wright  and Arthur R. Miller, Federal Practice and Procedure section 1202 (1990).

48. Federal Rule 9, Which is entitled "Pleading Special matters is provided in the complaint;" it provides inter-alia in sub section (b) in all averment of fraud… the circumstances constituting fraud… shall be stated with particular malice, intent, knowledge, and other condition of mind of a person may be averred generally. Rule 9 carves out from the more generally applicable Rule 8 standard certain cases and/or elements of claims that were deemed by the Federal Rules drafters to  require different treatment from that provide by Rule 8. 5 Charles A Wright and Arthur R. Miller Federal Practice and Procedure Section 1218 (1990).

17

49. In practice, Rule 9 is particularity requirement imposes a heightened pleading burden on plaintiff who assert fraud claim as is done in the Jonah Cancer and Blood treatment pavilion et al litigation. Petitioner did more than merely show the existence of a real claim through a short and plain statement of fraud under Rule 8. He has particularize the "circumstances of the defendant's fraud.

50. Rule 9 second sentence, however, relaxes this burden with respect to the pleading of scienter, permitting it to be pleaded "generally" rather than with particularity in fraud cases. Significantly, while there is a large body of Law examining what it means to plead fraud with "particularity" the term "generally" is undefined in the Federal Rule and there is almost no case Law examining what it means to plead a condition of mind "generally".

51. The paucity of authority may explain why some Courts like the USDC, WDNY appear to assume that because the term "generally" is being used to relax the heightened standard of particularity in a non- Securities, Anti-trust or Rico Law case imposed by Rule 9 (b)'s First sentence, a general pleading must be the opposite of a pleading with particularity, in a "conclusory" pleading. See e.g. in re Washington Public Powers Supply System Sec Litig, 623 F. Supp 1466, 1472 (W.D. Wash 1989). Such a conclusion as the one made by the U.S. District Court WDNY in Jonah Cancer and Blood treatment Pavilion, however, contradicts the minimum pleading standard established under Rule 8.

52. While Rule 9 (b)'s First Sentence raises petitioner's burden for pleading the circumstances of fraud relative to Rule 8. Rule 9 (b)'s second sentence returns the pleading standard for scienter to a "pre-heightened" generally applicable Rule 8 standard.

18

The interplay between the pleading burdens required under Rule 8 and Rule 9 was extensively analyzed by the Fifth Circuit in Schultea v. Wood 47 F3d 1427 (CA5 1995), which addressed whether a heightened scienter pleading burden could be imposed on plaintiffs in cases involving assertions of constitutional torts against public officials. The plaintiff in Schultea argued that because Rule 9 governs scienter pleadings, the lower Court could not properly imposed a heightened malice pleading burden on the plaintiff, even if compelling policy reasons suggested that it do so. See id at 1429-30.

53. The Shultea Court expressly rejected the argument that a heightened pleading burden in constitutional tort cases was incompatible with Federal Rules. Schultea; 47 F3d at 1434. Relying upon Judge Higgibotham's Special concurrence In Elliott v. Perez 751 F2d 1472 (CA5 1985) and on language opposite to securities fraud context through Federal Rule 8, the Court stated: [I]nsistence on greater pleading detail ought to rest on the reality that what is short and plain is inseparable from the legal and factual complexity of the case at issue... Federal trial Judges [may] insist that to state a claim, short and plain, against a public official, a petitioner must at least chart a factual path to the defeat of the defendants immunity free of conclusion. Shultea. 47 F3d at 1430. (citation omitted).

54. The court noted that the majority in Elliott had treated pleading question "as a choice between polar opposites notice pleading and pleading with particularity- and that the Fifth Circuit's insistence on pleading with particularity translated, in many if not most than an insistence that a plaintiff plead conclusion. Id. The Schultea Court continued:

> To be sure, we have invoked "heightened pleading" and "pleading with particularity" as a pleading requirement in kinship with Rule 9 (b)- but again our "particularity" seldom bit harder in

application than an insistence that a plaintiff plead more than conclusion. Had we simply insisted that petitioner's plead more than conclusion in their complaints, our holdings in those post Elliott cases would not have changed:

55. The pleading hurdle erected by the WDNY in Jonah Cancer and Blood treatment Pavilion was, in actual fact, somewhere not even between the poles if this bi-polar set. Significantly, the requirement of making a short and plain statement demands more under Shultea the quantum of pleading specificity required under Rule 9 (b)'s Second sentences general must be understood in relationship to Rule 8's own, consistently applicable pleading minimum. What constitutes a short and plain statement of a claim under Rule 8 is dependent on the type of claim, at issue and naturally is subjected to any special pleading burden imposed by other Federal rules.

56. The term "generalize" in Rule 9 (b) should be interpreted in a way which would render it consistence with Rule 8. Thus there is no proper analytical basis for the WDNY conclusion that petitioner's Johan Cancer and Blood Treatment Pavilion complaint Twombly, FRCP Rule 8 (a), 9 (b) and 12 (e) and jurisdictional statement burden for scienter was not met and intended to further relax the Rules requirement that a Complaint collective allegations set forth more than a short plain claim for relief instead unlike Rule 8. Rule 9 (b)'s Second sentence merely returns the pleading standard for scienter to a pre-heightened generally applicable Rule.

57. If petitioner pleads a short and plain statement, both the United States District Courts SDNY and WDNY will demand a particularize pleading. Petitioner justification in pleading particularity, specificity and a more definite statement is to distinguish between Federal constitutional question, fraud, conspiracy and non constitutional state common

20

Law claims. This line of analysis is really not any different from the frivolousness worry. Another way of saying that a claim is frivolous is to say that it ought to be brought in a New York state County Court and that petitioner does not have standing because of a possible criminal liability affecting "friends of the court listed as defendants.

58. The justification for providing specificity and particularity is not lack of notice, that the complaint fails to provide the defendants with a clear notion of the nature of the complaint but it is also to prevent the creative and artful obsfucation by the courts of pleading requirement. See Appendix D WDNY 2007 decision, Appendices E, F, G, WDNY 2009 decision. Such obsfucation and para Judges private judging and unarticulated, unintelligible, illogical, incoherent, unpublished junk opinions goes to the heart of Cononley criticism and the repudiation of Notice pleading..

59. A Complaint that fails to provide enough information to enable the defendants draft an answer is defective. However, the corrective remedy is a motion For A More Definitive Statement rather than dismissals, Rule 12 (e). But, because dismissals under a fair and honest adjudication on the merit under the Rule will not be available to the defendants court clerks and judges are so confident in their arrogance that their para private Judging will go unchallenged by using unpublished opinions which would have shamed and embarrassed a first year Law school student because it is unarticulated. Petitioner Jonah 1 and II complaints was sufficient for the defendants to frame an intelligent answer and its has met it's function to the Federal system and nothing more should be demanded of it. Further information should be found through discovery.

60. One of the reasons of requiring facts is that the complaint will be argumentative, prolix and verbose. See Newman v. Massachusetts 115 F.R.D. 341 343 (D

Mass 1987). To prove the defendants tortuous act and to show that they had departed from acceptable Medical Practice and given the fact that ECMC, Jonah Cancer and Blood Treatment Pavilion, Khalida Health Services and Prisoner Health Services and New York State Department of Correctional Services have refused to honor plaintiffs request for Medical records and refusals to release, 2002 - 2007, five years worth of PSA blood test, and imaging records; But petitioner must support his complaint with scientific facts and evidence from reputable and widely recognized oncologists, urologist and surgeons.

61. Yet, such pleadings are the result of requiring facts. The position being defendant here is not that facts need not be pleaded but rather any reference to scientific evidence that may not expose the defendants is unacceptable just as it is insufficient to alleged merely that the petitioner's constitutionally protected Civil and human rights in other words was violated.

62. How was it violated must be pleaded. The boiler plates forms provided for pro-se Litigants or the Forms accompanying the Federal Rules will be sufficient for a Rule 8 (a) complaint but it is outdated and should not be use in a complex Litigation such as Medical Malpractice, civil Rico, Anti-Trust, Qui Tam, Alien Tort Claim Act, Torture Victim Protection Act Complex Toxic Tort etc. See Form 9.

63. A typical Form 9 allegation opens with a jurisdiction statement. Only the following is requirement:

(1) On June 1, 1936 in a public highway, called Boylston Street, in Boston Massachusetts defendants negligence drove a motor vehicle against plaintiff who was crossing the highway.

22

(II) As a result plaintiff was thrown down and had his leg broken and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind and Incurred expenses for medical attention and hospitalization in the sum of one thousand dollars. See Form 9 FRCP.

(III) The final paragraph is the claims.

## IV
## SCIENTIFIC EVIDENCE

64. The basic principles of Cancer therapy are quite simple. remove as much of the Cancer as possible by physical means such as surgery or radiation, and then use drugs that affects the inner working of Cancer cells, While leaving normal cells unharmed. The real revelation in cancer therapy has been in the details of how to accomplish these tasks efficiently and effectively out smarting the acquired, (in some cases inherited) and evolutionary growth advantages of Cancer cells. Radioactive pellets surgically implanted in 2001 (Brachy Therapy) and two cycles of Lupron (Androgen, Deprivation Therapy) was combined to target the Prostate Cancer effectively which triggers a complete remission petitioner.

65. As simple as these principles are the required expertise comes from different disciples including surgery, radiation and clinical oncology, urology, and pain management. While the diagnosis and monitoring of patients required input from pathologists and radiologist. Each of those fields has advanced dramatically contributing to more patients being cured and living longer with fewer sides effects.

66. But here Dr. Zale Bernstein before pronouncing petitioner's stage IV bogus Metastatic prostate, bone and soft tissue Cancer did not performed a single test when he first saw petitioner at Wende Correctional Facility Regional Medical Center, Alden ,New

23

York is the winter of 2003. In 1993, a unanimous Supreme Court confirmed that Frye v. United States 293 F. 1013 (D.C. Circuit 1923) no longer applied in federal Courts. The Court held in Daubert v. Merill Dow pharmaceutical Inc, 509 US 579 (1993) that admissibility of scientific evidence does not depend on general acceptance in the Field. Rather it is up to the judge to assure that scientifical evidence is reliable, that it is truly proceeds from scientific knowledge which is what in made admissible under Federal Rule of Evidence Rule 702.

67. But here USDJ David Larimar, his Law Clerks, deceased USDJ John T Elfivm, Lori Reid and Laura Carra are claiming that the National Cancer Institute, American Society of Oncology, American Cancer Society, The Food and Drug Administration, State University of New York, Regional Oncology Center, University Medical Hospital, University of Rochester, Strong memorial Hospital, Roswell Park Cancer Institute, Wyoming County Community Hospital and the best Cancer Hospitals in the United States evidence is junk science. Justice Blackmum provided a list of five factors that could be considered by a judge in determining the reliability of scientific evidence.

68. These five factors were not proposed as dispositive, or as the exclusive of considerations, they were only to provide a flexible test. They reflected Justice Blackmum's view of what is involved in "science" and whether the expert is using science rather than junk science.

69. In Kumho Tire Company v. Charmichael 520 US 137 (1999), 520 US 137 (1999), the court said that because Rule 702 requires that expert testing on the basis of knowledge the judge has an obligation to ensure that actually is knowledge being used,

24

lie that the expert's opinions are based on reliable principles not just the experts speculations than a statement of conclusion even without the support of rule 9(b). This is because the Federal Rules of Civil Procedure have since their inception in 1938 insisted on more than conclusions and in this sense, have been a system of Notice pleading.

70. The WNDY U.S. District Court judges and Law Clerks are saying a shady oncologists practicing in one of the worst community hospitals in Western New York where none of those judges or clerks will use any of it's services even for a Life threatening medical emergency procedure, sham and shody clinical trial result is the better science.

## V
## PERSONAL JURISDICTION

71. Personal jurisdiction Rule 12 (b), (2) relief is unavailable to the defendants. This Court must accept the allegations of petitioner in the annexed Jonah civil complaint as true and all doubt are to be resolved in favor of petitioner not withstanding any controverting presentation because diversity of citizenship is complete.

72. During petitioner's litigation and persecution in a New York County Oyer and Termminer proceeding for a non existing article iii Federal subject matter. jurisdiction immigration fraud, New York County invoked the state so called long arm statute civil practice law and Rules CPLR section 320 (a) (1) (2) (3) (4) to give itself jurisdiction in a criminal matter after the U.S. Attorney SDNY, FBI, and I.C.E. had informed them that probable cause does not exist to prosecute a non criminal violation.

73. Petitioner was convicted for crimes that allegedly took place in Massachusetts, Rhodes Island, New Jersey and Pennsylvania and was indicted for Delaware, Maryland, Virginia. District of Columbia, and Connecticut and New York. The alleged non existing

25

crimes purportedly took place inside the United States Supreme Court, the United States Court of Appeals for the First, Second, third, Fourth, Ninth, Eleventh, Federal and District of Colombia Circuits, District Courts, Board of Immigration Appeal, Executives Office for Immigration Review Courts building and ICE District offices. Petitioner left the jurisdiction of New York in the winter of 1996. As a non Domicillary defendant bail was revoked allegedly because he did not have "ties" in New York.

74. Here New York State, City of New York Erie County jails and prisons, and Hospitals and government agencies buys medical, school, food, recreation supplies, tools and machinery from Ohio, Pennsylvania, and New Jersey and Delaware. Jonah Cancer and Blood treatment pavilion and the other defendants have transacted businesses in those forums. They have bought and sold good and services from those forum States.

75. To determine whether a defendant transacted businesses sufficient for exercise of personal jurisdiction the issue is whether a defendant had engaged in some purposeful activities in this state in connection with the matter in litigation. Defendants in the Jonah Cancer and Blood Treatment Pavilion litigation have bought medication, chemotherapy and other medical devices and instrument connected to the tortuous acts that are manufacture, formulated and distributed in this state. That by purchasing those drugs and devices and supplies each of the municipalities and state purposefully availed themselves of the privileges of conducting activities within this state and thereby invoked themselves of the benefits any protection of it's Laws.

76. A claim arises from a business transaction when there is some available nexus between the transacted business and the claim sued upon as where there is a substantial relationship between the transaction and the claim asserted. Petitioners allegation are not

26

self serving and has Factual and Legal Support which is sufficient to satisfy his burden to make a prima facie showing of personal jurisdiction. Each of the pharmaceuticals and Prison Health Services maintaining an actual physical presence or have sales representation selling their goods and services. Kalida Health and Johan Cancer and Blood Treatment pavilion have also purchase goods and medical supplies in this state.

77. Each of the New York based defendants have prevented and interfered with petitioners ability to obtain product information and clinical trials reports. The New York defendants controls Bedford and Benvenue Laboratories, this forum defendants in this litigation.

## VI
## COMPLETE DIVERSITY

78. The Courts of limited jurisdiction, may only exercise subject matter jurisdiction if there is but a constitutional basis and a specific statutory authorization from congress to exercise such powers. See Mayor of Nashvillie v. Cooper 73 (6 Wall) 247 (1867). Constitutional authority for the exercise of diversity jurisdiction derives from Artcle III section 2 of the United States Constitution, which gives Congress the power to vest Federal courts with jurisdiction over controversies between citizens of different States. Federal Courts first the powers to adjudicate diversity based from the Judicial Act of 1789.

79. The transitional view is that diversity jurisdiction exists to provide access to impartial tribunal to-out-of state resident who fear bias that they might experience in state courts. The state court bias is predicated upon his unfavorable Litigant status which flows from the state criminal trial, in to the SDNY, WNDY, Second circuit and Supreme Court.

27

Petitioner for example was never permitted to take a first Intermediate Appellate Court Appeals as of right.

80. He was denied appellate Counsel and forced to prosecute pro se his direct appeal from solitary confinement and event though he was disabled with psychotropic medication for "Post Traumatic Stress Syndrome" and the state created danger that was the proximate cause for example, his right hand was deliberately damage by prison guards during the assault that rendered him legally blind and his hand writing illegible.

81.He was denied medical treatment, and Special Les must Cartier prescription glasses bought by his family was confiscated. During the litigation of a New York state Court of Claim action against New York State Department of Correctional Services, and 28 USC 2254, FRCP Rule 60 (b) and Rule 11, this defendant confined petitioner in Solitary Confinement and he was brutally assaulted in 2009 as was done from 1999-to 2002 when for 3 1/2 years he was confined to Solitary Confinement during the pendency of his futile criminal direct appeal.

82. He could not Litigate his New York Court of Claims action because between December 28 2008 and April 1st 2009 he was in Solitary Confinement. See. Appendix Z. New York State Attorney General affirmation in opposition to Appendix AA, petitioners New York State Court of Claim Complaint, and Appendix BB, the Court's decision.

83.Regardless of the fact that the doctrine of Equitable Estoppel, Fraudulent Concealment and continuos medical treatment doctrine including obstruction of justice by state agents and regardless of the fact that petitioner notified the state Attorney General, starting from 2006 and in 2008, the admission by defendant Joseph Tan Tan in December of 2008, that petitioner did not have a meteststic Cancer when, he was

28

subjected to a clinical trial, the New York Court of claims was suborned by Sobochack and O'Hagan Wolf contamination by extraneous Influences to dismiss the claim against the State..

84. Bias against outsiders may become embedded in a judgement of a state court and yet not be sufficient apparent to be made the basis of a Federal claim. See Bufford v. Sun Oil Co 349 US 315 336. (1943) (Frankfurter, J dissenting). Nevertheless, even though these biases are not difficult or impossible to prove in this instant case and every claim brought by petitioner in New York, the framers are justified, the creation of diversity as a method of assuaging fears and distrust felt by out of state litigants.

85. Ironically practicing attorneys are using briefs and memorandum of law solicited on a pro bono from petitioner which they have successfully use in obtaining relief for their non indigent clients in both the District Courts and Federal Courts of Appeals from RICO to Constitutional Tort, Toxic Tort and criminal appeals.

86. Chief Justice Marshall has explained; however true the fact maybe, that tribunals of the State will administer justice impartially as those of the nation to parties of every description is not less true that the constitution of itself either entering apprehension of this subject or views such indulgence the possible fears and apprehension of suitors that it, established National Tribunals for the decisions of controversy between aliens and citizens or between citizens of different states. See Bank of United States v. Dexceaux 9  U.S. (5 cranch) 61, 87 (1804).

87. It is crucial to note that complete diversity is merely a judicial interpreting of a limitation imposed by 28 USC 1332. While the condition requires minimal diversity, courts have hence found that statutory language requires complete diversity. See State

29

Farm Fire Casualty Co. v. Tashiro386 US 532 (1967). Since the constitution does not mandate complete diversity congress has the power to change the judicially created standard announced almost two centuries ago in Strawbridge v. Curtis, 7 US (3 cranch) 207 267 (1806), C.F Louisville C And C Railway Co. v. Letson 43 US (2 How), 497 555 (1844), (Wayne J), Trinies v. Sunshine Mining Co. 308 US 66 79, (1939), Soderstrom v. Kungsholm Baking Co 189 F2d 1008 1034 (CA7 1951).

88. The interest of judicial economy is best served by litigating an entire case in one proceeding. Federal Courts developed the common law doctrines of ancillary jurisdiction and pendent jurisdiction to hear Article iii in cases or controversy in an effort to avoid piecemeal litigation and promote the efficient disposition of complete law suits. Congress combined those two doctrines into the uniform doctrine of supplemental jurisdiction in 1936, See 28 USC 1367, See United States Mine Workers v. Gibbs 383 US 715 725 (1966), Aldinger v. Howard 427 US 1, 6, (1997) C.F. Finley v. United States 490 US 545 549 (1989).

89. In Finley, plaintiff brought a wrongful death action under Federal Tort, Claim Act, See Id at 546, She sought to amend her complaint to add state claims against certain private defendants. The Court held section 1331 not F.T.C.A. authorized jurisdiction for supplemental parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressional authorized and will not read jurisdictional statements broadly id at 549. Even though Finely is not applicable in this matter and petitioners pendent state claims are presented together, the unarticulated, unintelligible, illogical and incoherent junk US Dist Court WDNY opinion and decisions seems to apply Finely to petitioners Jonah Cancer and Blood Treatment litigation.

## VII
## VENUE

90. The Law of personal jurisdiction imposes one set of limitations ; a Court may enter a judgement only if defendants possesses some relationship to the forum. This is not a section 1404 transfer and petitioner is not pleading forum non-convenience. The court occasionally refereed to section 1404 transfer as a counter weight to the broad choice of forum available to a plaintiff under an expansive interpretation of personal jurisdiction. See Shaffer v. Hertner 433 US 186 204 (1977), Ashia Metal Industries Co v Superior Court 480 US 102 108- 109 (1987), Burger King v Rudzewicz 471 Us 462 474 (1985), International Shoe Co v Washington 326 US 310 316 (1945).

91. Even if Courts in New York possesses personal jurisdiction and assuming the subject matter is properly before the Court, petitioner is unable to proceed against the defendants in both Federal and State Courts in New York and Courts under the Second Circuit.

92. Petitioner vacated and abandoned his New York City, and Westchester County homes, first, in December of 1996 (New York City) and in April 1998 (Westchester County) due to harassment and eventually, a home invasion burglary, warrantless/ illegal search and seizure domestic intrusion, by agents from the New York County District Attorney office, while petitioner was in Maui, Hawaii. There was no exigency and the Westchester County DA was never informed by New York County DA of the illegal search and seizure.

93. Petitioner from 1998 divided his time among his homes and residents in Greenwich FairField County Connecticut, Bernardsville Sommerset County, a New

31

Jersey "Country house", Rittenhouse Square, Philadelphia Pennsylvania Corporate Condominium, and Mauii Hawaii and Saint Johns United States Virgin Island vacation homes. According to Second Circuit case Law venue lies where a State prisoner resided prior to incarceration and not where he is incarcerated.

94. The requirement that a petitioner initially files suit in a proper venue represents another geographical limitations on Federal suits. Proper venue in most Federal cases is governed by 28 USC 1391 (1998). Proper venue represents a requirement distinct from personal jurisdiction. Personal Jurisdiction refers to the authority of the Courts to bind a defendant to a judgement, while venue refers to the convenience of the Court, as a site for litigation. See Nierbo Co v Bethlehem Shipping Corp. 308 US 165 167- 68 (1939). In some cases, venue may be improper even though the Court possess personal jurisdiction over all defendants. See Leroy v Great W United Corp, 443 US 173 180 (1979).

95. Each of the pharmaceuticals laboratories and prisoner Health Services corp have a physical presence in Ohio. Their Corporate Head quarters and research scientists are located in Ohio, New Jersey, Pennsylvania, Delaware, Illinois, Colorado, Kansas, California and Connecticut. They possesses all the scientific evidence and witnesses probative in this case.

96. New York is not the center of the universe and the state and municipal defendants will be represented by the New York City Corporation Counsel and claims against city employee are to be brought in the name of the City. County, of Erie County attorneys and New York State attorney General in Albany New York are in close proximately to this forum.

97. The defendants may move for a change of venue under section 1404 of the Judicial Code, 28 USC 1404 (a). Pursuant to this statue, a transferor court may send a case to a transfer district .See Ferens v. John Deers and Co 110 Sct 1274 (1990), for the convenience of parties and witnesses, in the interest of justice. In theory, the Law of personal jurisdiction provides petitioner with a broad forum, requiring only some minimum contacts between the defendants and any forum that the petitioner has chosen. See Burger King v Rudzewicz 474 US 462 (1985), Keaton v Hustler Magazine Inc 465 US 770 (1984).

98. Natalie Sobochak U.S. District court SDNY Senior pro-se clerk when informed that petitioner has a New York state Court of claim action instructed both the clerks and State Assistant Attorney General Jeane Strickland- Smith and New York State Department of Correctional Services on how to render the claim defective. (1) Collins Correction Facility was ordered to use express mail instead of registered mail. See New York Civil Practice Law and Rules Section 307 (2), (14). A pretextual prison infraction was used as probable cause to confined petitioner in a special housing unit segregation. This move effectively denied petitioner access to word processing service from the Law Library and his personal typewriter. (iii) On January 9, 2009 one month after filling his claim, and one week after his December 28 2008 SHU confinement, the court of claim rejected and returned petitioner's pleading and Appendix by falsely claiming that petitioner did not execute a CPLR 1101 (f) reduce filing fee application, (IV). Prison guards refused to give petitioner manila envelopes and stamps from his personal property and refused to process delivery of his bulky submission to the mail room. (V) on 1-21-09 petitioner was punitively transferred from a level iii medium "medical" Facility to Attica

33

a Maximum Facility separating him from an inmate Law Clerk who was able to decipher his illegible handwriting and has control of his work product (VI). Jean Strickland- Smith moved for dismissal on 1-30-09 under the belief that prison officers successfully destroyed all proof that petitioner submission was not defective. (VII) Eventhough, petitioner controverted and rebutted the presumptions of defectiveness and the court rejected his claim, and the fact that ample notice of intent was repeatedly served within the statutory 90 days, and petitioner requested Equitable Estoppel relief. The court in dismissing also failed to reach the merit of continuos treatment doctrine and fraudulent concealment and petitioner's motion for a more definitive statement as moot. (VII).

99. Both the court and state alleged they could not decipher petitioner's handwritten brief. See Appendix Z, BB and CC March 11, 2009 MRI supporting petitioner's claim that he was brutally assaulted on 12-28-08 by Collins Correctional Facility Special Housing Unit (SHU), officers with permission and knowledge of Assistant Attorney Generals to damper his litigation ador because this claim has the potential of damaging Andrew Cuomo quest for either the office of the Governor or United States Senate.

100. In choosing this forum petitioner is not forum shopping. See Hoffman v Blaski, 363 US 335 (1960). Any Law student is familiar with the adage of justice Oliver Wendell Holmes. "Strange cases like hard cases make bad Law". See Northern Sec. Co v U.S., 193 US 197 400  (1904). But See Hofman v. Blaski, 363 US 335 (1960) Which might be cited for a corollary proposition: Strange cases make bad Law.

## VIII
## EQUITABLE ESTOPPEL

34

101. The New York defendants have annexed the United States District Courts and Second Circuit into the Unified Court System of New York. A majority of Federal judges in New York City were either Assistant District Attorneys under Robert Morgantinau, former New York County DA or have practiced Law in firms that represented the pharmaceuticals. Those in the WDNY are closely connected to the party and ward bosses that controls the pork barrel known as E.C.M.C and New York State Department of Correction.

102. The state Attorney General office and Districts Attorney offices offer a Special Public Assistance programs for Law School graduates who either could not pass the state bar or cannot find employment in the private Sector and whose only qualifications is a relationship with a connected political favor bank member, VIP, including Federal judges. See Heckler v Community Health Services 467 US 51, (1984). Corniel-Rodrigues v Inis 552 F2d 307 (CA2 1996).

## IX
## IMMINENT DANGER

103. Since 1998, State officials and New York County prosecutors have physically and psychologically tortured petitioner. He is legally blind, Axons interfering with the transmission of nerves impulse, have been damage, nerve damage in his writing hand, staphylococcus aureaus infection, gynacomastia and risk of breast cancer induced deliberately by the Jonah Cancer and Blood treatment Pavilion et al defendant's and left untreated and chronic pain caused by the sham cancer treatment, chemical induced castration and sterilization See Appendix DD. Wyoming County Community Hospital Mamongram .

35

104.Since 2006 New York State Department of Correctional Services and Prisoner Health Services have rejected Sunny Regional Onocology Center and prison doctors recommendation of surgey to cure gynacomastia.

105. If the defendants and their friends in the Federal Courts are willing to deport petitioner to a county where they knew that because of his prior Human Rights advocacy and his non allienege, and tribal group he will be murder but yet decided to suppressed and destroyed Court fillings and pleadings, with holding or destroying exculpatory evidence under the control of the Courts, United states Attorney SDNY,FBI and ICE, which proved that the state fabricated a non existing scheme to immigration fraud and used a pretexual prosecution to triggered deportation, then imminent danger will be of little or no concern. See Wilson v Yaklich 148 F3d 596 1998 FED APP 180 p (CA6. !998).

106. Petitioner's claims was never adjudicated on the merit. The immutable truth is if Natali Sobochack and SDNY judge Kaplan Law Clerks or USMJ Debra Freeman Law Clerks could as was done by Natali Sobochack and judge Mukasey Law Clerks destroyed physical evidence, withheld pleadings from assigned Judges or simply "borrows" rubber stamp signature pads belonging to judges.

107.Is it so difficult to believe that Laura Carra and Lori Reid also borrowed a terminally ill and senile senior US District Judge John T. Elfivin in Jonah Cancer and Blood Treatment Pavilion et al I. Laura Carra is related to Charles S. Carra pro-se clerk and the Carra are political allies., personal friends of the Naples. Nancy Naples is still a power in Western New York Politics. See Appendix HH Jonah Cancer I of Appeal Second Circuit brief.

36

108. In Wilson v. Yaklich 148 F3d 596 1998 Fed App 180p (CA6 1998) rehearing and suggestion for enbanc denied 1997, and Cert denied 525 US 149 Sct 1028 (1999), the Court recognized that not all meritless claims are frivolous. See Gibbs v Roman 116 F3d 83 (CA3 1997) overruled enbanc in Abdul- Akbar v Mckelvie 2001 WL 76277 (CA 5 2001). See Choyce v Donminguez 160 F3d 1068 (CA5 1998) Luedtke v Bertrand 32 F Supp 2d 1074 (ED WD 1999)

## X
## DANGER CREATION

109. In Deshaney v Winnebago County Department of Social Services, 489 US 189, 201-02 (1989), the court addressed the scope of the duty imposed on government by the substantive prong of the Due Process Clause. Despite evidence that state authorities had been aware of the beatings and savage abuse by his natural father with the final beating resulting in severe and permanent brain damage, id at 193. The Respondents fraud and refusals to adjudicated petitioner claims on the merit was the proximate cause for the brutal physical and psychological torture at the hands of correction officials on 12/28/08. See Appendix CC March 11 2009 M.R.I. and the refusals to provide treatment. Despite the known difficulties that petitioner was experiencing at E.C.M.C the respondents indifference was responsible for his return to E.C.M.C. where he was infected with staph and his near death experience. See Appendix EE the Court held that the Due Process Clause imposed no affirmative duty on the state to protect Joshua from his father. Id at 195.

110. The court however conceded that when government restricts the ability of an individual to act on his own behalf for example, through incarceration or institutionalization it bears "a corresponding duty to assume some responsibility for his

37

safety and general wellbeing" Id at 199-200. Nevertheless, the majority concluded that Joshua did not fit within its narrowly defined custodial exception. Id at20

111. The state of New York has an affirmative duty to protect petitioner. It is the state's affirmative act of restraining petitioner's individual freedom to act on his own behalf through incarceration, institutionalization , or other similar restraint of personal liberty which is the "deprivation of liberty" triggering the protections of the Due Process Clause" id at 200.

112. One of the first courts to recognize an exception to the Deshaney rule was L.W v Grubb 974 F2d 119 (CA9 1992). In Grubbs prison officials at a medium security prison left a prison nurse alone with an inmate who had a history of violent sex abuse, offenses. Id at 120. The inmate terrorized and raped the nurse. Id. The ninth Circuit observed that the Deshaney rule is modified when the state stands in a "Special relationship" to the plaintiff or has in some fashion acted to endanger theplaintiff. Id at 121. See Cert denied Grubbs v L.W113 Sct 2442 (1993), Freeman v Ferguson 911 F2d 52 55 (CA8 1990). Ross v United States. 910 F2d 1422 1431 (CA7, 1990).

113. If petitioner was not is custody he certainly would not have sought treatment from a mediocre and dubious Oncologists in the person of Zale Bernstein. When New York State Department of Correctional Services refers a prisoner to an outside specialist such as a radiologists, oncologists, urologists and internists the private doctors do not discuss their findings with the prisoner. Their report are forwarded to prisoner doctors. While photo copying of legal documents in the Law Libraries cost between five to eight cents per page, prisons are charging fifty cents per page for medical record to limit access in violation of the HIPPA Act.

38

114. In 2006, petitioner was referred to strong memorial Hospital pain clinic University of Rochester Medical school. See Appendix A. Collins Correctional Facility Dr. Tan Tan, prisoner Health Services, Erie County Medical Center, Jonah Cancer and Blood Treatment Pavilion, Dr. Zale Bernstein, and the state of New York created a bogus and fictitious Medical history that petitioner was diagnosed in 1997 and treated with chemotherapy and radiation at the Memorial Sloan Kettering Cancer Center in New York City. Petitioner never received such treatment. Memorial Sloane Kettering Cancer Center does not have record of such treatment because petitioner did not have Cancer. In 1992, after the conclusion of a 120 days South East Asia litigation, petitioner was treated for food poisoning, sleep deprivation, exhaustion and Malaria upon his return to the United States at Doctors Hospital in Manhattan. Neither was the suspected malaria or food poisoning viral. See Appendix EE.

115. Petitioner suffers from gynacomastia an adverse drug reactions from a prolonged androgen deprivation abuse. The Department of Correction has denied Facility physicians and the New York State Regional Oncology center recommendation for surgery. Some Correction prison guards who have taken petitioner to outside trips Would deliberately striped search him in public, informed other prisoners of his medical condition while misrepresenting the facts.

116. Prison executives would often double bunk and cell him, while accommodation for single cells are made available to inmates with psychiatric, medical, old age or are homosexuals. See Dwares v City of New York 985 F2d 94 (CA2 1993) See Wood v Ostronder 879 F2d 583 (CA9 1989) cert denied 498 US 938 (1990), Cornelius v Town of Higland Lake, 880 F2d 348 (CA11 1989), US 1066 (1990).

117. The Federal Courts in New York State can be characterize as being carelessly apathetic at best and grievously unethical at worst in this matter. The United States Constitution Fourth Amendment Exclusionary Rules are being applied as was it in People v De Fore 150 N.E. 2d 585 (NY App Ct 1926). Justice Cardozo Famus opinion explaining why New York State would not adopt the Federal exclusionary rule, maintained, as most critics of the Exclusionary Rule ever since that excluding the illegally seized evidence was not the only effective way to enforce the Fourth Amendment (or its state constitutional Counterpart).

118. The offending officer might be arrested or sued for damages or even prosecuted for oppression. He was subjected to removal or other discipline at the hands of his supervisors. Id at 586-87. Here because of the implication of 18 USC 241, 243, 1962-1962 et Seq. 1964, disgorgement affecting the Jonah Cancer and Blood Treatment Pavilion et al state and local actors defendants, the Federal Courts have developed a very artful and creative procedural "Safe guard" to protect their friends i.e. by dismissing very well pleaded complaints as frivolous, malicious, fantastical or dillusionary and issuing unpublished junk para Judges private Judging opinions.

## XI
## MALICIOUS

119. It has been held that a malicious informa a paupers prisoner civil action for the purposes of the three strikes prison litigation Reform PLRA 28 USC 1915 (g), is one that is abusive of the Judicial Process. Federal Courts have a responsibility to assessed the nature of the allegation presented in an informa paupers civil action and determine whether the petitioner's motive is to harass and vex the defendants or to seek redress for a legitimate claim.

40

120. Petitioner prior to his incarceration was a boating enthusiast, a mountaineer and skier who has climbed and skied with professionals. He played polo, tennis, racquet ball, golf, cricket and rugby. He was an avid big game hunter, white water rafting and marathons participants. He has procreated and was in a very good health with over 12 million dollars worth of life and key man insurance policies.

121. Today he is an invalid, legally blind, sterile, suffers from chronic severe pain, gynacomastia, post traumatic stress syndrome etc due to the defendants tortuous acts, the Federal Courts negligence and petition Clause violation.

## XII
## FRIVOLOUS ACTION

122. A frivolous " in forma paupers prisoner civil action, for the purpose of three strikes provision of the (PLRA) 28 USC 1915 (g) is one that is indisputably unsupportable in law or in fact. Here even the National Cancer institute, the prison doctors, Dr. Zale Bernstein and New York State Regional Oncology Center have admitted that petitioner injury flows and are proximately caused by the defendants. See Wilson v Yaklich 148 F3d 596 1998 Fed App (180 p CA6, 1992), reh'g and suggestion for reh'g en banc denied (July 27 1998) Cert denied 525 US 1439 149 Sct 1028 143 LED 2D 38 (1999).

123. The United States Supreme Court has exhausted its patience for the claims of a number of in forma paupers (1Fp) petitioners see Brown v Cal Dept of Correction 536 US 936 (2002), Mulazim v Mich Dept of Correction 536 U.S 206, 206-07 (1998), Vey v Clinton 520 US 937, 937-38 (1997), Altwood v Singletory 546 US 297, 297-98 (1996).

124. The Court cites the drain of it's limited resources as grounds for resorting to this action . See Martin v DC Court of Appeals, 506 US at 1, 3, (1992) Citing In re McDonald 489 US 180, 184 (1989) ( per Curiam): The majority reasons that it is more efficient to prospectively exclude these litigation from the courts than to deny review of their petitions on a case by case basis. The majority see Martin v D.C Court of App Court v Martin 506 US at 1, places its authority for enacting this sweeping prohibition on its own procedural Rule 39.8, which States that if satisfied that a petition for a writ of certiorari, jurisdictional statement, or petition for an extraordinary writ is frivolous or malicious, the court may deny leave to proceed In forma paupers Sup ct. R. 39.8.

125. Support for this policy, however, has never been unanimous among the Supreme Court Justices. for every litigant to whom it has been applied, Justice Stevens, Brennan, Marshall and Blackmun have dissented (depending on the Courts membership at the time of the opinion). The Justice in dissent questioned whether the Court could and , equally as important should refuse to accept those petitioners suits. Martin 506 US at 4. They opinioned that the court should preserve the open door policy it had maintained since its inception. Id.

126. Since 1999, the United States Supreme Court has granted petitioner (1FP) status in a 18 USC 1961-1962 et Seq. Civil Rico, 28 USC 2241 deportation, 28 USC 22 1651 (a) All Writ Act and 28 USC 2254 Writ from a state criminal conviction even after the District Court and Second Circuit have cited Coppedge v United States 369 US 438 445 (1962) and Nietzke v Williams 490 US 319 325 (1989), In violation of 28 USC FRCP Rule 52 (a). In theory after abusing discretion the District Courts would poisoned the Second Circuit.

42

127. C.J Micheal B Mukasey in Curtis Van Stuysvesant v The Dime Bank Corporation et al RICO litigation converted a 18 USC 1961 into a 42 USC 1983 and then cited the Heck Rule to dismiss a civil claim against a bank. See Docket No: SDNY 00-Civ-9205 and 05-Civ1546.

128. In Van Stuyvasant v George Pataki, Mukasey converted a 42 USC1983 Eighth Amendment claim into a 28 USC 2254 even though, petitioners intermediate State court Appeal (criminal) was not perfected or subjected for review and petitioner did not ask to be released from prison, but sought to redress a brutal assault. psychological and physical torture proximately causation of his blindness.

129. But yet Mukasey his abuse of discretion is counted as strike for the purpose of PLRA. See Appendix B Administration Federal Administrative complaint, 28 CFR 14.2, Appendix C Appellate Division First Judicial Department Supreme Court State of New York Ethics Complaint, Appendix Q Second Circuit Judicial Council complaint.

130 Both the SDNY and Second Circuit granted petitioner an installment payment plan and prison officials are collecting courts filing fees on three appeals taken in the Second Circuit which was not a grant of fee waivers. These Appeals have been illegally counted for three strikes purpose. See Appendix FF. Trust account statement.

131. At the lower Federal Court Level, a grant of leave to proceed IFP means the litigant is not required to pay the Courts Fees, including the docket fee, and on appeal, the government bears the cost of printing the District Court record. 28 USC 1915 (a) (1), (c)

132. Courts possesses the authority to dismiss a suit based only as a meritless legal theory, but courts may also pierce the vail of the complaint's factual allegations to dismiss claims that are factually baseless. Nietzke v Williams 490 US 319 325 1989 id at

43

327. This analysis, however, is not meant to be a fact-finding process where federal disputes are resolved. Denton v Hernandez. 504 US 25, 32 (1992). The proper question is whether the factual allegation are "irrational or wholly incredible" id at 33. The Court has not set forth a definition for what constitutes a "malicious" filing under the statute. The standard of review for a dismissals pursuant to 1915 (e) (2) is abuse of discreation. Denton 504 US at 33.

133. The Federal Courts have failed to treat petitioner's claim of poverty in a two step process as the threshold, Inquiring, See e.g Watson v Caton, 984 F2d 537 539 (CA11993) (stating that the district court granted Watson IFP status and then dismissed his complaint under 1915 (d) (implying that the procedure involves two steps) Potnick v State Hospital, 707 F2d 243, 244 (CA2 1983) explaining that the Court may consider the frivolity of the complaint only after the petitioner gains IFP status by demonstrating his poverty.)

134. In the first step courts considers whether to grant leave to proceed IFP based solely on the sufficiency of the required affidavit of poverty. See Sinwell v Sharp 536 F2d 15 19. (CA3, 1976). In the Second step if the litigant is found adequately indigent and leave to proceed IFP is granted, the Court then considers whether the complaint is frivolous.

135. If indeed judged frivolous, the case is dismissed. See Loum v Underwood 262 F2d 866 866 (CA6, 1959) ("stating that if the action is traditionally without merit, the discretion of the District judge to deny the application [for leave to proceed IFP]). The two stops process allows for a decision on the merits of the case and ensures that a record will be created for appeal. The one step avoids the issuance of summons in

44

meritless suits and minimizes "the drain on public funds and judicial resources" caused by IFP litigants who file frivolous suits.

136. The Constitutional foundation underping the right of access to the courts is thought of as residing in the procedural and substantive facts of the Due Clause of the Fifth (and Fourteenth) Amendment or the petition clause of the First Amendment. The privileges and immunities Clause of Article IV also contains this element, but by nature, the right of access to the courts afforded by it is only access for non citizen equal to that of a state's citizen and, thus, does not apply in this context. See Curfield v Corgell 6 F Cas 546 551-52 (ED Pa 1823) 104.

137. As for the Due Process Clause, it would seem to encompass a right of access to the courts by stating no person shall... be deprived of life, liberty, or property, without due process of Law. But, here petitioner Van Stuyversant does not have access to the court, cannot use 18 USC 1961 et Seq., 42 USC 1983, 28 USC 2241 and 2254 Claims etc.

138. According, the court has directed it's clerks to no longer accepts petitions in non criminal cases from certain IFP petitioners unless they pay the courts docket fee. See in re Mubine, 536 US 920 (2002) id at 920, Debardeleben v Pugh 536 US 920 (2002) In re Snavelly 535 US 1052 (2002) at 1052 Furdjour v California 535 US 1014 (2002).

139. In the usual case, to warrant receipt of this treatment, the litigant has repeatedly filied petitions and appeals with the courts that the court has deemed frivolous. See e.g May v Sheahan 226 F3d 876, 883, (CA7 2000), Exparte Hull 312 Us 546, (1941); See Appendix K, petitioner has been mendaciously unethically barred from recovering his inheritance, 20.5 million dollar (circa) 1954 face value worth of negotiable Financial

45

instruments given to him on his birth by his grand parents due to 18 USC 1962 implication.

140. He is procedural barred from using 42 USC 1983, Alien Tort Act Claim, Toruture Victim Protection Act and even New York State common law tort claim he cannot file a legal or medical malpractice claim or petitioner either Federal or State Courts for post conviction release. See M.L.B v S.J.L 519 US 102, 107 (1996)

141. Ironically a recent obesity suit concerns about a coming wave of obesity-related civil actions seems to ignore the fact that the most significant suit yet was twice dismissed at the initial pleading stage, Perlman v. McDonald Corp 237 F. Supp 2d 512 (SDNY 2003) Perlman v McDonald Corp No 02-Civ 7821 2003 US Dist Lexis 15202 (SDNY Sept 3, 2003). No one forced the Perlman's to feed their kids McDonald happy meals. The Pellman patently "strike" and "nuisance" claim was permitted a full litigation on the merit by the Second Circuit. See Appendix GG 12-17-09 order entered Suzanne Grunzwerg, WDNY deputy clerk, eventhough on 7-1-09, See Appendix F, pro se clerk Charles Cara informed him of the closure of the case and on 10-6-09 and Michael J Roemer rejected Rule 60 (b) (1) (2) (3) (4) (5) (6) on SeeAppendix G.

## XIII
## CLASS OF ONE

142. Petitioner is in a class of one and by singling him out for unfair treatment the Federal Courts have violated the equal protecting clause thus placing him in a class of one. Since 1999 every claim that petitioner drafted for his fellow prisoners with permission has been adjudicated on the merit and some have won monetary judgement or equitable relief, including 28 USC 2241, 2254, New York CPL 440.10, vacature, CPL

46

440. 20, modification and reduction of sentence and PL 125. 25 (1) and (2) Murder intentional and depraved mind reversal and cancellation of removal. See Enquist v. or Dept of Agriculture – US 128 Sct 2146, 2148-2149 170 L.ed 24 975 (2008), Wllowbrook v Oleach 528 US 562 564 120 Sct 1073 145 Led 2d 1060 (2000).

143. Petitioner is also the only state prisoner with an alleged non existing prostate, bone and soft tissue lower g.1 organs Cancer or an early stage one prostate cancer who is in complete remission subjected to Jonah Cancer and Blood Pavilion Clinical trial as part of his sentence and judgement of conviction. He is the only state prisoner suffering from gynacomastia Adverse Drug Reaction refuse curative survey. The gravaman of the equal protection clause lies not in the fact of deprivation of a right but in the individual classification of persons aggrieved by the state's action. action. See Shango v. Jurich 681 F2d 1091 1104 (CA7 1982).

## XIV
## FRAUDULENT CONCEALMENT

144. From December 2003 the Jonah Cancer and Blood Treatment Pavilion defendants and from 2006, the United States District of New York have taken an affirmative steps to conceal the Jonah Cancer and Blood Treatment Pavilion tortuous act, by denying petitions his First Amendment Petition Clause right, Fourteenth Amendment due process, access to the Court, Eighth Amendment psychological and physical torture and intimidation. If the Statue of limitation is tolled, it is by reason of the defendants obstruction of justice, abuse of process and Fraudulent concealment.

145. The defendants (1) concealed the existence of their tortuous act. Joseph Tan Tan M.D Collins Corrections Facility primary care physician and Facility health Services Director  admitted on or before 12-6-08 that petitioner never had cancer when he denied

47

curative surgery for gynacomastia, pain management and approved quarterly consultations with Sunny University Medical Hospital Regional Uncology Center Urologists and uncologists, because according to him petitioner was never treated with Eligard Androgen deprivation and his condition was obesity.

146. That (2) petitioner remaining in ignorance of violation in light of the United States District Court WDNY declaration that his claim is a very wild fantastical and delusional claim which inferred that petitioner is suffering from dementia, psychosis or delusions, (3) that his continue ignorance was not the result of lack of diligence but because Erie County Medical Center, Jonah Cancer and Blood Treatment Pavilion and New York State Department of Correctional Services have refused to release petitioners complete Blood Count (CBC) and PSA prostate blood test results, biology boospy, spinal tap, MRI, PET Ultra Sound, DEXA x-ray imaging diagnostic test from 2002 to present in violation of HIPPA Act. See state of New York v. Hendrickson, Bros Inc, 840 F2d 1065, 1083 {CA2 1998}.

147. Petitioner can prove concealment with a showing that the defendants took an affirmative steps to prevent petitioner from litigating his claim with intimidation, coercion, starvation, assaults torture, extreme mental anguish, solitary confinement, punitive transfer, perjury, obstruction of Justice and extraneous influence upon Federal Executive officials and Judges.

148. Courts have overwhelming held that evens when the issue of fraudulent concealment involves both common and individual questions, the common question of whether defendants successfully concealment existence of the alleged tortuous acts

48

predominates over any individual question regarding the conduct of the defendants and petitioner's knowledge or due diligence.

149. Here petitioner's allegation of concealment includes allegation common to all the Jonah defendants and Federal Court respondent including allegations that defendants actively misrepresented the diagnosis of metastatic stage IV prostate and bone cancer, the efficacy of their therapies, falsely and publicly denied clinical trials, provided factual rationale for the magnitude of petitioner's injuries, which were state created danger, refusals to provide curative surgery and wrongly disparaged petitioner's claim indicating the existence of a phase I palliative medicare and Zomete Zelondric clinical trials, use of Elgard Androgen deprivation at a time it was removed by a Federal Court order from the United State , and ignoring the Food and Drug Adminerstration (FDA) black box warning on procrit and false advertisement of Casodex, and the fact that petitioner is in complete remission even at the filling of this petition.

## XV
## JURY TRIAL AND
## UNITED STATES CONSTITUTION
## SEVENTH AMENMENT

150. The Civil jury is an institution which is guaranteed by the Constitution, U.S Const amend. VII, but which is distrusted when given the task of deciding Constitution cases. Much of this distrust results from a fundamental incompatibility between the functions of the constitution rights and jurors. Constitution rights general serve counter majoritorian functions, including the protection of political minorities from centrist oppressive tendencies and produces of popularity elected government. The jury by contrast, is accepted and sometimes defended as a means of injecting populist norms and

49

standard into the legal process. Seee Gregg v Georgia, 428 US 153 181 (1976) (Juries are a significant and reliable objective index of contemporary values.

151. This tension makes it especially important to examine the control which Courts exercise over jurors in constitutional and racketeering Influence Corrupt Organization Act, Civil Rights, Toxic Tort Cases brought by United States District Courts and appeal taken to the Second Circuit. This control may be exercised as judges withhold cases or issues from the jury prior to trial See FRCP Rules12, 50 (a), 56. as Courts refuses to adjudicate on the merit, Rule 52 (a) or frame the questions left to jurors in jury instructions Rule 51, and as courts review a non jury dismissals in post trial motions and appeals, Rules 8(a) 9(b), 12(e) 50 (b) 52(a) 60(b) (1)(2)(3)(4)(5)(6).

152. There are two main reasons why Federal Courts have reduced the role jurors play in Civil Constitution cases neither of these developments result from a direct attempt to counter the majoritarian tendencies of jurors. Instead they are rooted in the United State Supreme Court's inability to reduce Constitutional Law to coherent rules which officials can be expected to understand and Federal District judges can be expected to apply. First, the Supreme Court has expanded the immunity of government officials from the burden of trial in situation in which their conduct did not violate a clearly established Constitutional right. See Harlow v Fitzgerald, 457 US 800 818 (1982). Because such immunity is properly enforceable by the court prior to trial, fewer constitution cases reach the jury. Second the Supreme Court. has re-evaluated the distinction between question of Law and question of fact, in constitution cases. Bose Corp v Consumer Union of the United States Inc, 466 US 485 499-500 (1984), Miller v Fenton, 474 US 104 (1985).

50

153. Where a Constitution standards can be given into proper meaning only when properly applied, the Supreme Court has indicated that a jury's application of such standards to undisputed facts can be second guessed by judges. The doctrine of independent review of Constitution facts predates the Courts rediscovery of section 1983 in Monroe v. Pape 365 Us 167 (1961).

154. Thus many of the most important decision involving the Jury's role in Constitution cases arose in other context such as judicial review of criminal conviction involving protected actively, Fiske v Kansas 274 US 380, 385-387 (1927). Violative of Equal Protection, Norris v Alabama, has brought; a Civil proceedings impacting upon the defendants Constitutional rights, New York Times Co. v Sullivan, 376 US 254, 284-86 (1964).

155. Since 2000, because neither qualify, absolute or Executive and Eleventh Amendment immunities protects defendants in petitioners Civil action, the District Courts and Second Circuit, have invalidated FRCP and FRAP in every case petitioners has brought, and are using unpublished illogical, unarticulated, incoherent and unintelligible para private boiler plate decisions which they have buried in the Courts archives.

156. Writing for the Court in Anderson v Creighton, 483 US 635 638-39 (1987) Justice Scale noted that every Constitutional right is clearly established at a very high level of generality. The justice then added:

157. But if the test of "Clearly Established Law" were to be applied at this level of generality, it would bear no relationship to the "objective Legal reasonable" that is the touchstone of Harlow. Plaintiff will be able to converted the rule of qualify immunity that

51

our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. id at 640.

158. Justice Scalia clarified the proper interpretation of the term "clearly establish" holding that the right the officer is alleged to have violated must have been "clearly Established" in a more particularized, and hence more relevant sense; The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson 483 US at 640.

159. The New York base United States District Courts have used artful decision making to deprive petitioners a Seventh Amendment jury trial. In the Dime Bank Corporation I and II, 18 USC 1961 et Seq Civil RICO action USDNY SDNY decided No 00-9205 (December 5, 2000) [I], an USDNY SDNY Docket No as-cv-1546 [II], Chief Judge Michael B Mukasey granted private individuals and Private Banks transaction and absolute immunity and then invoked the Supreme Court Heck v. Humphrey rule to bar recovery of over 250 million dollars (face value) of (circa 1954) negotiable financial instrument. The Western District in the Jonah Cancer and Blood Treatment Pavilion litigation in using foreign Service Act immunity act (FSIA) and the Eleventh Amendment to protect their Erie County Medical Center friends.

160. The Dime Bank RICO action triggered petitioners brutal assault resulting in legal blindness and injury to writing hand. The Jonah Cancer and Blood Treatment Pavilion et al I WDNY docket No 07-Civ-0108 triggered a deliberate infection of methicillin resistance stapphylococus Aureaus (MRSA) and Jonah II WDNY 09-Civ-0269 triggered 12-28-08 spinal cord injury from assault. See Mathew v Eldridge 424 US 319, 334-335 (1976) test for determining how much process is dues.

161. In most simple cases the jury's role is easily understood. The jury is permitted to enter a general verdict as long as the evidence creates a genuine issue of material fact. See FRCP Rule 50 (a) and 56. The enter verdict will generally stand as long as the court provide the jury with correct statement of governing Law in it's instruction and any reasonable trier of fact could have reached the same verdict. See Rule 50 (b).

162.Constitutional rights are commonly countermajorian, they would exists in order to limit the power of popularly elected government, Because jurors are usually selected from the same [poll of voters which elects state and local officials a danger exists that they would abuse their discretion to see that the government's self interest is served which is not the case here since none of the Jonah Cancer litigation defendants are elected by the voters. See Lawton v Nightingale 345 F Supp 683, 684 (N.D Ohio), (1972), Curtis v Loether 415 US 189 (1974) Hildebrand v Board of Trustee of Michigan State University 607 F2d 705 707 (CA6 1979).

163. The Supreme Court is reluctant to presume that any part of the judicial system is prone to bias. See McClesky v Kemp 481 US 279, 297 (1987) (exceptionally clear proof " is necessary before the court will infer that a jury abused its discretion in treating murderers of white victims more harshly than murders of black victims at death penalty stage).

164. Petitioner is guilty of his vehement, caustic and sometime brutally sharp condescending, sardonic, and cynical intellectual attack of the Federal and state judiciary and prosecutorial bars, which must be protected if the guarantees of the First and Fourteenth Amendments are to prevail.

53

165. The New York State Federal and Local Judiciary bars have restricted the quality of Civil Rules and Criminal procedure Law in every matter brought by petitioner. The judiciary application of such a standard is unlikely to be neutral with respected to the content of speech and petition clauses and holds a real danger of becoming an instrument for the suppression of those vehement, custic and sometime unpleasantly dissident sharp attacks.

166. Those judges local interest conflicts with national interest protected by the Constitution. A state which audit its prison and hospital in order to protected local pork barrels and business may be in violation of The dormant commerce clause if the protection afforded by the resolution come at this expense of a stateless citizen or out of state business.

167. A Federal judiciary who owes their appointment to the support of local ward bosses and political hacks empowered to decide an underlying fact may have an interest in frustrating process that are due. It is easy to overstate the significance of whether a judge or jury wields primary authority in constitutional litigation.

168. Judges are prone to localism and have demonstrated the same bias and prejudices as their state court brethren. If Natlie Sobchack SDNY pro-se clerk court persuade Lori Reid, SDNY U.S Magistrate Judge Lisa Margaret Smith, and Laura Carra, WDNY Victor Victor E BiaChanin Law clerks, and Charles Carra pro-se clerk to forged the signature of Hon John T Elfvin who has since died from his infirmity, old age, and dementia the same affliction he was suffering from when Jonah I was assigned to him, and since they have not been arrested, prosecuted, terminated or disbar, what other proof is needed to prove local bias.

169. In steady of correcting their Jonah I unethical conduct the WDNY circled the wagon given the fact that petitioners has moved for the disbarrment of Sobochack, Reid and Carra and would like to see their prosecution for violating public corruption, honest service, racketeering, and civil rights, Federal Statutes in the public interest, decided to validated and legitimized Jonah I decision with an articulated disjointed, illogical unintelligible decision not sounding in Law and equity.

## XVI
## STATUE OF LIMITATION

170. The doctrine of continuing Medical Treatment, fraudulent concealment and Equitable Estoppal negates latches and statue of limitation, and collateral estoppel affirmative defenses. Deprivation of access to the library and failure to comply with the American with Disability Act by providing petitioner with accommodation available for prisoners suffering from vision or hearing impairment available at Sullivan Correctional Facility or an identical medium facility in that hub should be review under equitable Estoppel.

## XVII
## STARE DECISIS

171. The Constitution gives Congress the power and authority to regulate procedural practice in Federal Courts. Sibach v Wilson and Co In 312 US 1 (1941). See U.S Const. article 1, 8, CL9 id at Article iii 2 CL 2. In the first instance, this legislatures authorities rest entirely with Congress. See Gibson v Ogden 22 US 1 197 (1824). However, Congress has excerised this power by delegating rule drafting responsibilities to the Supreme Court subject to a statutory process of congressional review 28 USC 2072 (a) (2000).

172. As the Supreme Court has constantly observed, changes, in Federal pleading requirements " "must be obtain by the process of amendments of Federal Rules, and not by judicial interpretations, Swierkiewicz v Sorema NA 534 US 506 515 (2002) (quoting) Leatherman v Tarrant County Intelligence And Coordination Unit 507 US 163 168 (1993) CF Bell Atlantic Corp v Twombly 127 Sct 1955 2007, and Iqbal v Hasty 490 F3d 143, 157-158 (CA2 2007) Cert granted Sub nom Ashcroft v Iqabal 128 Sct 2931 (2008).

173. By imposing a conclusory, vague and ambiguous pleading standard contrary to the plausibility standard and Rules 9 (b) pleadings prescribed by the Supreme Court and by the Federal Rule of civil procedure the United States District Court WDNY, David Larima and his Law clerks have intruded upon congress's Article 1 Legislative authority. See Chambers v NASCO inc 501 US 32, 66 (1994) (Kennedy, J dissenting), ("The Federal Rules of Civil procedure are as binding as any statue duly enacted by congress, and Federal Courts have no discretion to disregard the Rules mandate than they do to disregard Constitutional or statutory provision's ) (alteration in originals), quoting Bank of Nis v United States, 487 US 250 255 (1988).

174. When a District Court or the Second Circuit refuses to abide by the requirements of Federal Law, Supreme Court precedent or the circuit own case Law, the behavior undermines the integrity of the Legal System as a whole. This is not an insignificant point. In disregarding the Supreme Courts promulgated and congressionally approved Rule 9 (b) and 12 (e) by demanding notice pleading of petitioner complaints, the WDNY U.S. District Court is acting Lawlessly or surely beyond it's constitutional and statutory authorities; a matter of no small consequence. Nor can the U.S District

Court WDNY claim that it is merely interpreting the language of the rules since the Supreme Court has clearly retired Rule 8 (a) (2).

175. Perhaps even more disturbing is the WDNY refusal to follow repeated, unanimous Supreme Court precedent rejecting notice pleading requirement in fraud and conspiracy suits. The WDNY actual violates fundamental stare decisi principals, sadly refuting chief justice requirements assertion that this principal is so firmly established in jurisprudence that lower court would deliberately refusals to follow decision of a higher Court. Hubbard v United States 524 US 695, 720 (1995) (Reinquest, C.J, dissenting).

176. As the Supreme Court noted in Hutto v Davies; 454 US 370 (1982), unless we wish anarchy to prevail within the Federal judicial system, a precedent of this court must be followed by the lower Federal Courts no matter how misguided the judges of those courts may think it be. Id at 375, See also Hubbard, 514 US at 713 n13 ("We would have thought it self evident that lower courts must adhere to our precedents").

177. The refusals of an inferior court to follow the decision of the Supreme Court is an indefensible attack on the basic structure of the Federal judicial system under Article iii of the United States Constitution. The plain language of the Federal Rules of Civil Procedure, history any intent of the Rules and settled Supreme Court precedents established that the requirement for filing a motion to dismiss for failure to state a claim are modest.

178. The Federal court in New York however continues to defy the Federal Rules of Civil procedure and 49 years of Supreme Court precedent by creating a judge made Rule which are applied on an ad hoc basis mendaciously only to petitioner. Federal Law clerks have adopted the unethical attitude of New York state Appellate and county courts

in criminal matters, where the trial records and pleadings are ignored and the prosecution illogical, unintelligible disjointed, incoherent, semi illiterate affirmation in opposition are adopted and summarized in an unarticulated boiler plate post card decision.

179. The WDNY decisions violates bedrock stare decisis and separation of powers principles and create a violation of the First Amendment petition Clause rights. See Federal Rule of civil procedure Rule 8(f) ("All pleadings shall be so construed as to do substantial justice ") See Federal Rule of Civil procedure Rule 9(g) (when items of Special damages claimed, they shall be specifically stated"). In Scheuer v Rhodes 416 US 232 236 (1974), the Court stated that a court task in reviewing the sufficiently of a complaint "is necessarily a limit one" and concluding that the issue is not whether a plaintiff will ultimately prevail... Indeed it may appear or the face of the pleadings that a recovery is very remote and unlikely. but that is not the test.").

180. Ironically the WDNY Conveniently overlooked the requirement in the second half of Rule 8 (a) (2) that complaints "show that the pleading is entitles to relief" Since they are insisting that petitioner made use of FRCP form 9, See FRCP Rule 84, to plead fraud and conspiracy against four dozen defendants See FRCP form 11 and 12.

181. Petitioner Jonah Cancer and Blood Treatment Pavilion I and II put forward. Specific, non conclusion factual allegations that established improper motive it preempted a reply to defendants answer or an instruction by the Court. For a FRCP rule 7 (a) and FRCP Rule 12(e). See Crawford-EL v Britton, 523 US 574 597-98, (1998), See Siegart v Ailley 500 US 226 236 (1991) (Kennedy ,J, Concurring in Judgement.)

182. The doctrine of stare decisis does not compel one district court judge to follow the decision of another. Where a seemed judgement believes that a different result

58

may obtain independent analysis is Appropriate judicial precedent are presumptively correct and valuable to the legal community as a whole. quoting ASTI Communication Inc v shar fund Ltd 2008 US App Lexis 21787 (Second Circuit 10-20-08). See e.g. Arkansa Elec Corp v Public Serv Commin, 461 US 375 (1983), Harvey v Halluck 309 US 106 (1940), Morgan V State Marine Line 398 US 375 (1970).

183. Petitioner upon withdrawing his complaint did not file a second circuit notice of appeals . See Griggs v Consumer Discount Co. 454 US 56, 58, (1982). (Per Curiam). He did not file a Rule 60 (b) (3) or 59 (e) motion See 28 US 2106. He did not abonded his claim or refused to proceed. He was prevented from litigating his claim due to the hostility of the court and unreasonable application of Coppenge v United States 369 US 438 445 (1962). Courts have the tendency to obsfucate coppedge. The Court in Coppedge emphasized equal treatment for every litigants before the bar. id at 447, and felt that no priori justification can be found for considering IFP suits, as a class to be more frivolous then those in which cost have been paid. id at 449. Neitzke v Williams is abuse and frivolously used to protect special interest group from answering to their tortuous act. See 490 US 319 325 (1998). The WDNY also misapplied Denton v Hernandez 504 US 25, 32 (1992) by failure to realize that the standard for a dismissal pursuant to 1915 (e) (2) is Rule 52 (a) abuse of discretion.

## XVIII
## CONCLUSION

184. The United States District Courts in the Second Circuit is an institution under threat and the threat is from within, that is from... Pro se Clerks, staff attorney's, administrative  Clerks and Law Clerks. Every lawyer is aware of the reality of the nullifying jury. But very few are aware of clerks nullification. At the general level law

clerks and staff attorney's nullification of the Federal rule of Civil Procedure and Rule of Evidence occurs when clerks either through incompetency, ignorance, laziness, bigotry corruption and fraud choose not to follow the Law as it is given to them by statutes, code, regulation, Court of Appeals and Supreme Court decisional Law and precedent. Theoretically this occur mostly in Civil Case.

185. Law Clerks, and staff attorney's are deciding cases without reviewing the evidence eventhough they are not authorized under Article III.

Clerks in the Jonah Cancer and Blood Treatment Pavilion et al litigation nullify because they don't think that the Law should be applied to the defendants before them. With this type of nullification the clerks does not object to the Law per se, but rather, a clerk objects to the Law as it applied to this particular defendants. The clerks decision to engage in this form of fraud stems from bad motives.

186. The clerks in the Jonah Cancer and Blood Treatment decided not to apply the Law to the particular defendants because they feel racial and national origin anmius towards petitioner, their friends or political allies and family members are inculpated or they are using their fraud to solicit employment from defendants and their Law firms. On July 1 2009 Charles Carra pro Se clerk WDNY inform petitioner that he did not have an active case See Appendix F. Petitioner moved on July 7, 2009 with a hand written Rule 60 (b) (1) (2) (3) (4) (5) (6) motion to vacated the void and fraudulent judgements See Appendices D and E and K, But, Michael J Roemer clerk on October 6, 2009 rejected petitioners motion as being illegible See Appendix G.

187. Petitioners word processor which was confiscated on December 28, 2008 was release to him on October 10, 2009. See Appendices L, M, N. on November 18,

2009, Petitioners informed the White House, office of Legal Counsel, Attorney General, DOJ F.B.I and Administration Offices, of The United States Courts. Appendix GG. The Unified Court System of the state of New York Appellate Division Presiding Justice See Appendix N, and Disciplinary Committee See Appendix C that the Jonah Cancer and Blood Treatment Pavilion et al litigation will be filed in this Court together with 28 USC 1615 (a)

188. Suddenly on 12-21-09, petitioner was served with on order dated 12-17-09 signed by Suzanne Grunzwerg electronically, entered and purported to have been decided by USMJ Hon Hugh Scott after a Phantom trial or hearing granting the defendants judgement. See Appendix II.

189. The WDNY does not have jurisdiction to adjudicated a matter that was not before the Court. CJ Richard Arcara was informed in light of his Court fraud, the incompetency of the District Court clerks, their actual conflict of interest including the application for the disbbarment of Carra and Reid, the Court abject and profound inexperience in complex litigation or petitioners unfavorable litigant status in New York, he will move in another forum. Now comes another bipolar Court clerk with a para Judge private judging bogus junk opinion attempting to obstruct justice, in an unarticulated, illogical, unintelligible, incoherent, fraudulent opinion.

190 This an ignominious example of clerks failure to abide by the Law. Para judges nullification has been widely perceived as a negative act undertaken by United States District Circuit Court Law clerks. It is very harmful. The system pays a significant price for the "delegation" to para judges because inappropriate delegation of

61

quintessential judicial tasks has become the norm. See Appendix JJ April 14 2006 letter to Administrative office of the United States Court.

191. There is no doubt in any one's mind that state of New York prosecutors, judges and Court clerks, Federal judges and their clerks are afraid of petitioner and their fear is the proximate cause of their egregious unethical conduct. One observation drawn from the above examples is that Federal Rules nullification as a response to fear becomes clearer when it happens on a systematical basis. It is not difficult to see why these clerks are engaging in nullification. It is only after a series of cases involving petitioner that a pattern emerges and one can see that those clerks have refused to apply the Law. Only the arrest, prosecution conviction, disbarment or termination of employment will put a stop to the this corrupt and illegal practice. See Appendix KK September 4 19996 Character reference from assistant District Attorney Fredrica Jeffries. Appendix LL August, 3, 2009 invitation from the U.S. District Court SDNY to File Rule 60 9B0, 28 USC 2254.

192. That no prior application has been made for the relief prayed for except as set forth herein.

193. Petitioner is demanding that respondent be commanded to file a responsive answer under the penalty of perjury with incontrovertible proof and uncontroverted evidence disputing the factual allegations made herein in the sprit of adversarial process. Their silence should be take  as an admission and no special consideration should be given to them because of their exalted status as Law clerks and Federal judges.

62

WHEREFORE, petitioner respectfully request the informa paupers be granted, and adjudication of all complaints and petition on the merit, and a prohibition against Rule 52 (a), para judges private judging, and together with such other and further relief as may to this court deem just and equitable.

Respectfully Submitted

Curtis Van Stuyvesant
Petitioner Prisoner 99A4590
Attica Correctional Facility
P.O. Box 149
Attica New York 14011-149

63

## VERIFICATION

I Have read the foregoing 28 USC 1651 (a) All Writ Act petition for a writ of Mandamus And Prohibition, and the annexed Affirmation In Support, and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those matters I believe them to be true. I certify under the penalty of perjury that the forgoing is true and correct.

Executed in the Township of Attica, Wyoming County, New York on the 16 Day of February 2010.

Signature:

CURTIS VAN STUYVESANT

64